HOWARD S. KEEP, Plaintiff, v. PACIFIC DEVELOPMENT CORPORATION and SOUTH SEAS PACIFIC CO., INC., Defendants.

Supreme Court, Kings Special Term, June, 1922.

Actions — suit in equity — contract construed as one of employment — when employee not entitled to equitable relief — complaint dismissed without prejudice to an action at law.

A few days before the expiration of an option held by plaintiff to purchase a certain pier with structures thereon in the harbor of Pago Pago on an island in Samoa, one of the corporation defendants advanced a certain sum of money to be used in the exercise of the option, upon plaintiff's agreement to convey the property to said defendant when acquired. It was further agreed that if said defendant, after investigation, decided to proceed with the enterprise contemplated and to form a trading corporation in connection therewith, it would give the plaintiff "such participating interest in such development project and such official position in such company as may be formed, and pay him such salary as may be hereafter agreed upon," and also that if said defendant should not decide to develop the property or form a trading corporation, plaintiff should have an option ninety days after notice of such determination within which "to purchase such property at a cash price equal to the amount of the investment of said defendant and six per cent interest." After plaintiff had procured the property by the exercise of his option he conveyed it to the other defendant which was formed for trading purposes. In consummation of such agreement the defendant advancing the money for the purchase of the pier property wrote plaintiff a letter reciting such purchase and that it had formed a corporation, the other defendant, and employed plaintiff as manager at an initial salary of $6,000 a year with an extra allowance of $1,000 in addition. The letter, by the terms of which plaintiff was to give his entire attention to the development of the business and to make his residence in Pago Pago until further arrangements were agreed upon, stated: "We will be prepared to distribute between you and the other executives of the company 15% of the net profits of the company after it has earned 10% on its capital." A controversy arising which plaintiff declined to arbitrate, he brought a suit in equity upon an allegation that he had no adequate remedy at law and demanded judgment that the conveyance by plaintiff to one of the defendants be vacated and set aside and that both defendants be directed to reconvey to him or his nominee the property in Samoa upon such terms as might be just and equitable and for $100,000 damages. *Held*, that the acceptance by plaintiff of the terms of the letter created the relation of employer and employee and he must be denied

relief not because he has a remedy at law but because upon the facts proved he was not entitled to equitable relief.

The action being for a rescission of the contract, which rests upon the theory of an avoidance thereof, was inconsistent with an action for damages, and the complaint will be dismissed but without prejudice to an action at law.

Suit in equity to set aside a conveyance and for damages.

*Harris, Corwin, Moffat & Schak (John H. Corwin,* of counsel), for plaintiff.

*Sullivan & Cromwell (Emery H. Sykes* and *Walter G. Weichmann,* of counsel), for defendant.

Callaghan, J. In 1918 and 1919 plaintiff, a lieutenant-commander in the navy, was stationed at Pago Pago, on the island of Tutiula, in Samoa. While there he extensively investigated the copra industry in the South Pacific, acquired statistics relative to its production, the cost thereof, methods of distribution, shipping facilities, labor requirements, and, as he claims, established friendly relations with influential natives on the island. This was done with the view to interesting capital to engage in the copra industry. He had visions of a monopoly of the copra industry and, as a result, dreams of great wealth. In the harbor of Pago Pago was a pier with certain structures thereon, which had, during the war, come into the control of the American alien property custodian. With the view of acquiring the pier for shipping facilities he procured an option to purchase the property, which was to expire on June 30, 1919. After procuring the option he set out to interest capital in his proposed scheme. Up to June twenty-seventh, however, he had not succeeded. On that day, three days before the expiration of his option, plaintiff presented his plans to the defendant Pacific Development Corporation. On the 28th day of June, 1919, he entered into an agreement with that defendant whereby it agreed to and did advance $8,000 to the plaintiff, which was used by him to exercise his option. Plaintiff agreed to convey the property to the defendant upon its acquisition by him. It was further agreed that in the event that the defendant after making investigations decided subsequently to proceed with the enterprise and form a trading corporation in connection therewith it would give the plaintiff "such participating interest in such development project and such official position in such company as may be formed, and pay him such salary as may be hereafter agreed upon." Also that if the corporation should decide not to develop the property or form a trading company the plaintiff should have an option ninety days after notice of such determination within which "to purchase such property at a cash price, equal to the amount of the investment of the corporation therein

and six per cent interest." After procuring the property by the exercise of his option plaintiff conveyed the property to the corporation formed for trading purposes. In consummation of their agreement of June twenty-eighth the defendant Pacific Development Corporation wrote the plaintiff a letter whereby it recited the purchase of the property in the harbor of Pago Pago and that it had formed a corporation known as the South Seas Pacific Co., Inc., with a capital stock of $50,000, and employed the plaintiff as manager at an initial salary of $6,000 per year with an extra allowance of $1,000 in addition. The letter of July ninth further provided, " We will be prepared to distribute between you and the other executives of the company 15% of the net profits of the company after it has earned 10% on its capital." Plaintiff was, by the terms of the letter, to give his entire attention to the development of the business and to make his residence in Pago Pago until further arrangements were agreed upon. The parties further agreed, " that you [plaintiff] will make immediate application for your resignation from the United States Navy and that this offer will stay in effect for a period of three months from this date."

Plaintiff resigned from the navy. Mr. Herbert H. White was elected president of the South Seas Pacific Co., Inc., and the defendant, through Mr. White, purchased a yacht for the company's business in Samoa. It was agreed that Mr. White and the plaintiff would sail to Samoa for the purpose of investigating the proposed enterprise. The expedition evidently was regarded more as a junketing trip than a business proposition. Mr. White claimed to be an experienced navigator. He invited a few friends to accompany him to Samoa. These friends as well as the plaintiff and Mr. White all shipped as members of the crew. Discord arose soon after the expedition got under headway. The trouble between Mr. White and the plaintiff grew out of their disputes as to which was the most experienced navigator, and from the use of intoxicating liquors. They reached Bermuda. After remaining there for about one week Mr. White sailed without the plaintiff, after making provision through the American consul at that port for the return of the plaintiff to the United States. There is a very serious dispute between the plaintiff and Mr. White as to the occurrences at Bermuda which led to Mr. White's sailing and leaving plaintiff behind. As I view this action, however, it is not necessary to determine in this action the merits of that controversy. Plaintiff immediately returned to New York and demanded that he be permitted to sail to Pago Pago and assume his duties. Mr. White and his companions reached Honolulu, where the yacht

was abandoned, and Mr. White proceeded to Samoa by way of a regular line steamer and the yacht was thereafter taken to Samoa by a crew employed for that purpose. After much discussion between plaintiff and those representing the defendants in New York, the defendant South Seas Pacific Co., Inc., wrote the plaintiff in January, 1920, referring to the controversy between the plaintiff and Mr. White, as a result of which Mr. White had " dismissed plaintiff from the service of the company." A method of settlement of the controversy was suggested by the defendants, which was not accepted by the plaintiff. The settlement was to be by arbitration and the findings of the arbitration were to be final. If the determination should favor the plaintiff he was to be reinstated under " your original contract of employment." If adverse, plaintiff was to accept his dismissal. Pending a final decision of the controversy plaintiff was to receive a salary of $500 a month. He declined to arbitrate. Upon this state of facts this action was brought in equity, the plaintiff alleging that he had no adequate remedy at law, and demanding judgment that the conveyance by plaintiff to one of the defendants be vacated and set aside and that the defendants be directed to reconvey to him or his nominee the property in Samoa upon such terms as may be just and equitable, and for $100,000 as damages. Upon a former trial of this action the court of its own motion transferred the cause to the Trial Term, on the ground that the complaint showed a cause of action at law and not in equity. Upon appeal the order was reversed " on the ground that the parties are entitled to have a decision upon the equitable cause of action." It is, therefore, necessary to determine the legal relation existing between the parties. Plaintiff contends that the relationship was that of joint adventure. Defendants assert that the relationship is that of employer and employee. It is apparent that the defendants, without knowledge of the capabilities or character of the plaintiff, saw great possibilities in the development of the copra industry in the South Pacific. With little knowledge of the possibilities it was willing to and did advance $8,000 to enable plaintiff to exercise the option. The evidence is barren of a fraudulent purpose or design on the part of the defendants. The option in the hands of the plaintiff was valueless without financial assistance. Practically, therefore, the defendant corporation and not the plaintiff reposed the confidence. Plaintiff had nothing to lose. The defendants risked the loss of the $8,000. The contract of June twenty-eighth met the emergency and had no purpose other than to meet the temporary situation. The further course to be pursued was left to further determination and culminated in the agreement

expressed in the letter of July ninth. Up to the time of the acceptance of the terms contained in the letter of July ninth plaintiff would no doubt have had the right if further negotiations proved unsatisfactory to reimburse the defendants and acquire title to the property at Pago Pago. Such action would have restored the parties as nearly as possible to their original positions. A new situation, however, was created by the acceptance of the terms in the letter of July ninth. It is not claimed that any advantage was taken of the plaintiff in the negotiation of that agreement. Plaintiff voluntarily accepted the terms of that letter. If it was the intention of the parties to create the relationship of joint adventurers language suitable for that purpose was not employed. On the contrary, the provisions and the language and the acts of the parties are consistent with an intent to create an employment. Had there been no provision in the contract other than the agreement of the defendants to pay plaintiff a salary of $6,000 per year, no one, I take it, could argue that a joint adventure was in contemplation. It is not unusual to give compensation to an employee by way of a share of the profits. That is exactly what the letter of July ninth contemplated. The plaintiff was placed in the same position and in the same category as other executives, presumably salaried employees. Had there been no disagreement in Bermuda plaintiff no doubt could have insisted that he was an employee of the defendants with the right to participate in the profits, that is, to have a substantial bonus in case of the success of the enterprise. The option held by plaintiff was not property but merely a right to acquire land. That was acquired and title taken in the name of the defendants by reason of the use of defendants' money, and while plaintiff might have rescinded the contract of June twenty-eighth upon the failure of the parties to come to a future agreement as to their subsequent conduct, yet the acceptance by him of the terms of the letter of July ninth vested title to the property absolutely in the defendants subject only to the rights of plaintiff under the terms of the letter of July ninth.

The plaintiff insists that he resigned from the navy as a result of his contract with the defendants and that he has suffered damages by that act. By the letter of July ninth the defendants demanded and received the undivided attention of the plaintiff. He was required, therefore, by the provisions of that letter to resign from the navy. He could not devote his time and attention to his duties in the navy and fulfill his contract of July ninth. The provision in the letter requiring plaintiff to resign from the navy was surplusage, as it was inconsistent for him to hold both positions and give his entire attention to the new enterprise. It is plain,

therefore, that the acceptance by the plaintiff of the terms of the letter of July ninth created the relation of employer and employee. A breach of that relationship, therefore, gives a right of action at law and not in equity. Plaintiff seeks to justify his appeal to vacate on the ground that the defendants have broken and in fact repudiated their contractual obligations. If that theory is controlling here I know of the breach of no contract which would not afford equitable relief. There is no necessity here for the intervention of equitable relief. Equity will decree rescission and make effective restitution through the exercise of its equitable powers. *Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.*, 230 N. Y. 316; *Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.*, 199 id. 268. But these principles are not applicable here. Plaintiff was not a coadventurer or a partner, but a mere employee. He contributed nothing to the joint adventure, neither the land in Pago Pago nor his position in the navy. There is nothing to be restored to him. It might be that the proved facts warrant the recovery of damages at law, but they do not disclose the need for equitable relief. A rescission in law is sufficient. Neither can a court of equity assume jurisdiction to award damages in this action upon the assumption that equity could properly take jurisdiction, but cannot do justice without awarding damages. The plaintiff here must be denied relief not because he has a remedy at law but because the facts proved do not entitle him to equitable relief. It is not a case where the proved facts bring plaintiff within the domain of equity jurisdiction, where the court will retain jurisdiction and award other relief in lieu of that demanded. *Dudley* v. *Congregation, etc., of St. Francis*, 138 N. Y. 451. Moreover, this action is for rescission which rests upon the theory of an avoidance of the contract; an action for damages is based upon the theory of the affirmance of the contract. The two remedies are inconsistent and cannot coexist. For the reasons here expressed the complaint will be dismissed but without prejudice to an action at law.

Judgment accordingly.